NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

TENNESSEE PRODUCTS & CHEMICAL CORPORATION, ROANE ELECTRIC FURNACE DIVISION, Respondent.

No. 15343.

United States Court of Appeals Sixth Circuit.

April 1, 1964.

Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., Washington, D. C., Walter C. Phillips, Region 10, N. L. R. B., Atlanta, Ga., for petitioner.

Joseph Bell, Kleinbard, Bell & Brecker, Philadelphia, Pa., Elliott Bredhoff, Feller, Bredhoff & Anker, Washington, D. C., for respondent.

Before O'SULLIVAN, PHILLIPS, and EDWARDS, Circuit Judges.

## ORDER DENYING PETITION FOR WRIT OF ERROR CORAM NOBIS.

This matter is presented to us by a pleading entitled Petition for Writ of Error Coram Nobis. On April 8, 1963, this court, in this cause, entered a consent decree enforcing an order of the National Labor Relations Board. This order, entered pursuant to a settlement agreement between the National Labor Relations Board and respondent, Tennessee Products & Chemical Corporation, required, *inter alia*, that respondent re-hire certain employees that it had discharged during the course of a strike, laying off, if necessary, employees who had replaced such discharged employees. The pleading before us is signed by three of such laid off employees. The relief sought is the vacation of our order of April 8, 1963, and the doing of "whatever is required by law and justice."

The petition avers the following facts as the grounds for relief. During the course of a strike respondent discharged the strikers. These employees were represented by United Steelworkers of America, AFL–CIO. Respondent company then began to replace the dis-charged strikers with other men, among which were petitioners.[1]

The AFL–CIO union, on behalf of the discharged strikers, thereupon filed with the NLRB a charge that respondent company was guilty of an unfair labor practice in discharging the strikers. A hearing was had and a Trial Examiner's report found that the company had violated the Act, by discharging some seventy-seven of the striking employees. The report held, however, that the remaining strikers were not, during the work stoppage, engaged in a protected activity. The company was ordered to reinstate the seventy-seven. The Union and the Board's general counsel took exception to the Trial Examiner's report and contended that all strikers, a total of about four hundred, should be reinstated with back pay. Pending hearing before the Board, a settlement was reached whereby the company agreed to an order calling for the reinstatement of all the discharged Union members, laying off, if necessary, those that had replaced them. Our decree of April 8, 1963, enforced such order. We are asked coram nobis to vacate our decree.

While coram nobis, as a civil writ, was abolished by Rule 60(b) of the Federal Rules of Civil Procedure, it was permitted survival or revival in criminal practice by United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248. Our function in litigation arising under the National Labor Relations Act is well defined by that Act, and we find nothing therein giving us the right to entertain original applications for writs of error coram nobis. We doubt, too, whether in such matters we have any general equity powers.

Apart, however, from procedural labels, we do not think that the present address to us calls for or permits action on our part. We need not decide whether the present petitioners would or should have been allowed to intervene in the above-entitled cause, had a request there-

---

1. Petitioners assert that some 200 replacements were hired, and we assume that the named petitioners seek to assert the rights of all in that class.

for been made to the NLRB or to us before the matter was finalized by our decree. After our decree, one or more of the present petitioners did file with the appropriate Regional Director of the NLRB a charge asserting that what was accomplished by the carrying out of the settlement, approved and enforced by our decree, and which resulted in the lay-off of some or all of those who replaced the reinstated strikers, was an unfair labor practice. The Regional Director of the NLRB, as well as its general counsel, refused to issue a complaint. In the case of Dunn v. Retail Clerks, 307 F.2d 285 (C.A. 6, 1962), we held that neither a District Court nor ourselves have power, by mandamus or otherwise, to command the NLRB to issue such a complaint. Such, too, was the holding in Hourihan v. N. L. R. B., 91 U.S.App.D.C. 316, 201 F.2d 187 (C.A.–D.C., 1952), cert. den. 345 U.S. 930, 73 S.Ct. 792, 97 L.Ed. 1359, and Bandlow v. Rothman, 108 U.S.App.D.C. 32, 278 F.2d 866 (C.A.–D.C., 1960), cert. den. 364 U.S. 909, 81 S.Ct. 273, 5 L.Ed. 2d 224. As we stated in Dunn v. Retail Clerks, supra:

> "Congress has invested the N.L.R.B. and its agents with powers which, if withheld or abused, can visit serious and irreparable harm upon those who, under the scheme of the N.L.R.A., cannot obtain the help of judicial intervention. Foreclosed as we are from entrance by judicial writ into such a situation, we must leave an injured party to the assistance of those empowered to apply administrative remedies or executive correction." (307 F.2d 285, 289)

The petition before us also infers that when the petitioners were hired as replacements for the strikers, promises were made which might give them some contractual rights to continued employment. But, whatever the status of petitioners' alleged contractual rights, this court is not the forum in which to vindicate them. Our function is fundamentally appellate in NLRB matters. It has been held that, since administrative bodies are created to serve the public interest, they are not a proper forum for the litigation of private contractual rights. Amalgamated Utility Workers v. Consolidated Edison Co., 309 U.S. 261, 268, 60 S.Ct. 561, 84 L.Ed. 738, 743 (1939).

The petition now before us is denied.