**Richard Taylor CARDALL, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. C–84–0654.**

United States District Court, D. Utah, C.D.

Dec. 26, 1984.

---

Richard T. Cardall, plaintiff, pro se.

Brent D. Ward, U.S. Atty., Bruce Lubeck, Asst. U.S. Atty., D. Utah, Salt Lake City, Utah, for defendant.

## MEMORANDUM AND ORDER

SAFFELS, District Judge, Sitting by Designation.

The movant, Richard Taylor Cardall, has filed a motion for writ of error *coram nobis* seeking an order setting aside his October 14, 1975, securities fraud convic-

tion. Cardall is no longer in custody and is awaiting sentencing on another conviction. He claims that the conviction at issue resulted from ineffective assistance of counsel in failing to object to an unconstitutional jury instruction. As a result, Cardall claims that a jury verdict was in effect directed against him by the court, Chief Judge Willis Ritter presiding.[1]

At the culmination of a week-long trial, the court orally stated its instructions to the jury. Numerous times during the instructions the court told the jury that the burden of proof beyond a reasonable doubt was on the government. The jury was also instructed that "intent" was an element of the crimes alleged, that the government must establish intent "by evidence beyond a reasonable doubt," and that "it is the law that a person intends the usual and probable consequences of his acts."[2]

Cardall's counsel did not contemporaneously object to the instruction on intent, nor did he raise the issue on appeal. Counsel did not have an opportunity to review these instructions prior to closing arguments, as the court did not inform counsel of its proposed instructions as required by Rule 30, Federal Rules of Criminal Procedure. On appeal, the Tenth Circuit held that there were no grounds for reversal on the court's violation of Rule 30, because no objection was made until after closing argument, and no evidence was presented to establish prejudice to the defendant. *United States v. Cardall*, 550 F.2d 604, 607 (10th Cir.1976).

The writ of error *coram nobis*[3] is a writ used to correct fundamental errors

---

1. Cardall was convicted on October 14, 1975, on nine counts involving securities fraud. He was initially sentenced to nine (9) consecutive five (5)-year terms, but shortly thereafter the sentence was reduced to nine consecutive two (2)-year terms.

   Cardall appealed his conviction, and the United States Court of Appeals for the Tenth Circuit affirmed. *United States v. Cardall*, 550 F.2d 604 (10th Cir.1976). The Tenth Circuit essentially found as follows on the issues on appeal: (1) the comments of Judge Ritter during the trial, though unjudicial, did not prejudice the jury against Cardall; (2) the court's failure to comply with the requirements of Rule 30, Federal Rules of Criminal Procedure, did not constitute grounds for reversible error; (3) Cardall was not denied his right to allocution at the time of sentencing; and (4) the sentence imposed was not cruel and excessive.

   On January 27, 1978, Cardall moved for a modification of his sentence pursuant to Rule 35. On April 7, 1978, Judge Winner, sitting by designation, reduced the sentence and Cardall was released from custody. Judge Winner had not reduced the amount of the fine, however, and on July 26, 1978, Cardall filed a second motion pursuant Rule 35, which motion apparently was never ruled upon. Cardall filed this motion for writ of error *coram nobis* on July 25, 1984. The judges of the United States District Court for the District of Utah recused themselves, and the undersigned judge was designated to hear this matter.

2. The entire instruction on intent reads in the transcript as follows:

   "You are instructed that an essential element of the securities offenses charged is an intent to defraud, and this intent must be established by the evidence beyond a reasonable doubt.

   "'Intent' as used here means that the defendant must have had the purpose or willingness to defraud in mind. The existence of intent to devise and conduct such a scheme may be shown by the acts and declarations of the parties concerned and the surrounding circumstances as well as by direct evidence. Experience shows that direct evidence of fraudulent intent is not generally to be expected. And for that reason, the law permits a resort to circumstantial evidence as a means for finding the truth.

   "Moreover, since intent is largely a state of mind, and it is impossible to look into a man's mind to see what went on, the only way you have to determine that question is to take into consideration all the facts and circumstances shown by the evidence as a whole. And one must also bear in mind that an intent may be inferred from the act itself, for it is the law that a person intends the usual and probable consequences of his acts."
   [Tr. at p. 721–22.]

3. The movant has filed his petition for writ of error *coram nobis* as a civil action in this court. The United States Supreme Court has spoken of *coram nobis* as "a step in the criminal case." *United States v. Morgan*, 346 U.S. 502, 505, n. 4, 74 S.Ct. 247, 249, n. 4, 98 L.Ed. 248 (1954). The courts have subsequently considered *coram nobis* to be a "hybrid" action, and applied procedures similar to that on a motion to vacate. See *United States v. Balistrieri*, 606 F.2d 216 (7th Cir.1979), *cert. denied* 446 U.S. 917, 100 S.Ct. 1850, 64 L.Ed.2d 271 (1980); *United States v. Tyler*, 413 F.Supp. 1403 (M.D.Fla.1976). This

which render a criminal proceeding irregular and invalid. *Abel v. Tinsley*, 338 F.2d 514 (10th Cir.1964). The court's authority to grant *coram nobis* relief, the vacation of the conviction or sentence, is derived from the All Writs Section of the Judicial Code, 28 U.S.C. § 1651(a), which states that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles allowed." Relief under the writ of error *coram nobis* is narrow and allowed "only under circumstances compelling such action to achieve justice." *United States v. Morgan*, 346 U.S. 502, 511, 74 S.Ct. 247, 252, 98 L.Ed. 248 (1954). *Coram nobis* relief is available even after a defendant is released from custody. *Id.*

■ While *coram nobis* is a narrow and extraordinary remedy, its present scope encompasses not only errors of fact that effect legal proceedings, but also legal errors of a constitutional or fundamental proportion. *United States v. Wickham*, 474 F.Supp. 113, 116 (C.D.Cal.1979). On a writ of error *coram nobis*, the court may determine whether the defendant received effective assistance of counsel. See, *e.g.*, *Morgan v. United States*, 396 F.2d 110 (2nd Cir.1968).

■ In considering a collateral attack on a criminal conviction on the basis of ineffective assistance of counsel, the court is guided by *Strickland v. Washington*, —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Cardall bears the burden of demonstrating that his counsel was not functioning as counsel guaranteed by the Sixth Amendment, and that counsel's errors were so serious as to deprive the defendant of a fair trial, meaning one whose

result is reliable. *Id.* —— U.S. at ——, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. The proper standard for attorney performance is that of "reasonably effective assistance." *Id.* Counsel has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. *Id.* —— U.S. at ——, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. Thus, to establish his right to *coram nobis* relief on the ground of ineffective assistance, Cardall must establish certain facts. First, Cardall must show that the instruction of the trial court violated his due process rights. Second, Cardall must show that reasonably effective counsel would have objected to the instruction. Third, Cardall must show that he was prejudiced by the instruction in that he was denied a fair trial.

■ In determining whether an isolated instruction violates a defendant's due process rights, the court must consider the instruction in the context of the overall charge. *Hux v. Murphy*, 733 F.2d 737 (10th Cir.1984).[4] In addition, in making a decision on collateral relief, the court must consider the ailing instruction as it relates to all components of the trial, including the testimony of the witnesses, the arguments of counsel, the exhibits admitted into evidence, and the instructions to the jury. *United States v. Frady*, 456 U.S. 152, 169, 102 S.Ct. 1584, 1595, 71 L.Ed.2d 816 (1982). Cardall contends that the instruction on intent given by the court, where intent was a disputed issue, could have been viewed by a reasonable juror as a mandatory presumption rather than a permissive inference. *Sandstrom v. Montana*, 442 U.S. 510, 515, 99 S.Ct. 2450, 2454, 61 L.Ed.2d 39 (1979). "An erroneous presumption on a disputed element of the crime renders irrel-

---

court finds that Cardall's *pro se* motion is properly filed and properly before this court.

**4.** Arguably, *Hux v. Murphy*, 733 F.2d 737 (10th Cir.1984), stands for the proposition that an instruction creating a mandatory presumption on the issue of intent does not cause reversible error if the court also instructs the jury that the prosecution must prove every element of the crime beyond a reasonable doubt. This court does not believe that *Hux v. Murphy* stands for such a proposition, and that such a proposition

would run counter to the law as enunciated by the Supreme Court in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), and *Connecticut v. Johnson*, 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983). *Hux v. Murphy* stands only for the proposition that a *Sandstrom* error must be viewed in the context of the overall charge. *Id.* 733 F.2d at 740. Each case must therefore be reviewed on its own particular facts.

evant the evidence on the issue because the jury may have relied upon the presumption rather than upon that evidence. If the jury may have failed to consider evidence of intent, a reviewing court cannot hold that the error did not contribute to the verdict." *Connecticut v. Johnson*, 460 U.S. 73, 85–86, 103 S.Ct. 969, 976–977, 74 L.Ed.2d 823 (1983) (plurality opinion). Such a presumption is the functional equivalent of a directed verdict on the issue of intent. *Id.* at 84, 103 S.Ct. at 976.

This court is reviewing Cardall's conviction on collateral attack and not on direct appeal. The ailing instruction is reviewed in the context of the overall charge and as a component of the entire trial. Although the portion of the instruction which Cardall raises in this collateral attack was a misstatement of the law, this court cannot say that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. *United States v. Frady, supra,* 456 U.S. at 169, 102 S.Ct. at 1595. The ailing instruction was included as just one part of one sentence in a transcript of instructions totaling fifty-five (55) pages. In its proper context, the other instructions identified the permissive nature of the presumption and certainly cured any defects in the ailing instruction. A reasonable juror could have been only left with the impression that he had a choice as to how to perceive the inferences of intent, and that it was not mandatory that he presume the defendant's intent from his acts.

Even if the instruction had violated *Sandstrom v. Montana, supra,* this court is bound to conclude that Cardall was not denied effective assistance of counsel. Under similar circumstances, the Fifth Circuit Court of Appeals found trial counsel had not rendered ineffective assistance by failing to object to the trial judge's jury instructions.

*Sandstrom,* the case in which the Supreme Court held such an instruction to be unconstitutional, was not decided until 1979, some three years after the petitioner's trial. Counsel's inability to foresee future pronouncements does not render his representation ineffective. As this court has said, "Clairvoyance is not a required attribute of effective representation." *Cooks v. United States,* 461 F.2d 530 (5th Cir.1972).

*Garland v. Maggio,* 717 F.2d 199, 207 (5th Cir.1983).

Similarly, Cardall's conviction occurred in October, 1975. *Sandstrom* was not decided until 1979. His counsel can hardly be claimed to have been ineffective for failure to anticipate a Supreme Court ruling some four years thereafter.

Finally, under *Strickland v. Washington, supra,* Cardall bears the burden of showing that he was deprived of a fair trial, meaning one whose result is reliable. Although Cardall continues to assert his innocence, he has made no showing whatsoever that the instruction herein denied him of a conviction whose result was reliable.

IT IS BY THE COURT THEREFORE ORDERED that the motion of movant Richard Taylor Cardall for writ of error *coram nobis* is hereby denied.